

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-23-00146-CV

**BITE ENTERTAINMENT, LLC** d/b/a Urban Air South San Antonio;
UATP Management, LLC d/b/a Urban Air Adventure Parks; UATP IP, LLC;
UA Attractions, LLC; and Allen Van Brocklin,
Appellants

v.

Jason Rene **TREVIÑO** Jr. and Cassandra Nicole Lara,
Individually and as Next Friends of J.T., a Minor,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2022CI18492
Honorable Nadine Melissa Nieto, Judge Presiding

Opinion by:  Patricia O. Alvarez, Justice

Sitting:  Patricia O. Alvarez, Justice
Beth Watkins, Justice (concurring in the judgment only)
Liza A. Rodriguez, Justice

Delivered and Filed: April 3, 2024

AFFIRMED

After their minor child was injured at a commercial trampoline park, the parents sued the park, and it moved to compel arbitration. The park argues the father's friend had actual or apparent authority to sign an arbitration agreement on behalf of the father and son, the claims are within the scope of the arbitration agreement, and the trial court erred by denying its motion to compel arbitration.

Because the trial court could have found that the park failed to prove the existence of an arbitration agreement, we cannot conclude that the trial court abused its discretion.

We affirm the trial court's order.

## BACKGROUND

Jason Rene Treviño Jr. and Cassandra Nicole Lara, who are not married, are the parents of J.T., a minor child (collectively the Treviños). Jonathan Leal and Jason are friends.

**A. Trampoline Park Incident**

On August 2, 2022, Jason and his son J.T. met Jonathan and some of Jonathan's family members at Urban Air Adventure Park in south San Antonio. At the entry to the park, they checked in together.

Urban Air alleges Jonathan electronically signed a Release and Indemnification Agreement on behalf of his family members, his friend Jason, and J.T., and the Agreement contains an arbitration provision.

Jason paid the admission price for himself and J.T., and they entered the park. After they were jumping for about fifteen minutes, J.T. fell and broke his arm.

**B. Trial Court Proceedings**

Jason and Cassandra sued Bite Entertainment, LLC d/b/a Urban Air South San Antonio and others.[1]

Urban Air answered, and it moved to compel arbitration under the terms of the Agreement.

In the Agreement, paragraph 6.A[2] ("Arbitration") requires, inter alia, any personal injury claim arising from the use of the premises to be settled by binding arbitration. Paragraph 8 states

---

[1] The Treviños sued Bite Entertainment, LLC d/b/a Urban Air South San Antonio; UATP Management, LLC d/b/a Urban Air Adventure Parks; UATP IP, LLC; UA Attractions, LLC; and Allen Van Brocklin (collectively Urban Air); Fun Spot Manufacturing, LLC; ABEO North America, Inc.; Michael O. Browning, Jr.; and Unleashed Brands.
[2] The Arbitration provision expressly invokes the Federal Arbitration Act (FAA).

that the person signing the Agreement "warrants and represents to Urban Air that he/she has the legal authority and such person's actual and implied authority to execute this Agreement on their behalf, including, but not limited to, the arbitration clause, release, indemnity agreement, and license."

On November 16, 2022, the Honorable Solomon John Casseb III held a hearing on Urban Air's motion, and his notes from that day show that he granted Urban Air's motion to compel arbitration and stay proceedings. But he passed away unexpectedly about three weeks later, and he had not signed an order on Urban Air's motion.

The Treviños filed a motion to reconsider, and on January 10, 2023, the new trial court held a hearing on the motion. After hearing testimony from Jonathan and the parties' arguments, the trial court granted the Treviños' motion for reconsideration and denied Urban Air's motion to compel arbitration.

Urban Air appeals.

## C.    Urban Air's Arguments

Urban Air argues that Jonathan had actual or apparent authority to sign the Release and Indemnification Agreement on behalf of Jason and J.T., the Treviños' claims are within the scope of the Agreement's arbitration provision, and the trial court erred by denying Urban Air's motion to compel arbitration and stay proceedings.

## D.    Treviños' Arguments

The Treviños argue they cannot be bound by the arbitration provision in the Release and Indemnification Agreement because Urban Air failed to prove the Agreement came into existence, and even if it did, they never gave Jonathan authority to sign the Agreement on their behalf.

Before we address the parties' arguments, we briefly recite the law pertaining to a motion to compel arbitration.

**APPLICABLE LAW**

"A party seeking to compel arbitration [under the FAA] must [first] establish the existence of a valid arbitration agreement . . . ." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *accord Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 585–86 (Tex. 2022).

"In determining validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding); *accord In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding).

"Contract formation defenses—such as whether a party ever signed a contract, whether a signor had authority to bind a principal, or whether the signor had capacity to assent—are . . . threshold issues to be decided by the court." *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124 (Tex. 2018); *accord Baby Dolls*, 642 S.W.3d at 586.

"A legally enforceable contract consists of (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *accord E-Learning LLC v. AT & T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet.).

"Whether the parties reached an agreement is a question of fact." *Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 100 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (quoting *Parker Drilling*, 316 S.W.3d at 72); *see Gutierrez v. Laredo Indep. Sch. Dist.*, 139 S.W.3d 363, 368 (Tex. App.—San Antonio 2004, no pet.) ("Generally, the intent of parties to be bound is an essential element of an enforceable contract and is often a question of fact.").

"If a party opposing [arbitration] denies the existence of the agreement, the court shall summarily determine that issue." TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(b); *accord Baby Dolls*, 642 S.W.3d at 586; *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 189 (Tex. 2009) (orig. proceeding).

### STANDARD OF REVIEW

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry*, 551 S.W.3d at 115 (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding)). "The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *see Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

Where an abuse of discretion standard applies, and the "trial court does not issue findings of fact and conclusions of law with its . . . ruling, all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *see In re Labatt Food Serv.*, 279 S.W.3d at 643 (noting that "[u]nder an abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by evidence").

"When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court." *BMC Software*, 83 S.W.3d at 795; *see Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003).

But "[a] trial court does not abuse its discretion when basing a decision on conflicting evidence." *HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 259 (Tex. 2021) (citing

*Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding)); *accord Butnaru*, 84 S.W.3d at 211; *see In re Marriage of Thrash*, 605 S.W.3d 224, 229 (Tex. App.—San Antonio 2020, pet. denied) ("Under an abuse of discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error; rather, they are simply factors in assessing whether the trial court abused its discretion." (quoting *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.))).

Further, "[i]n determining whether the trial court clearly abused its discretion, an appellate court may not substitute its judgment for the trial court's determination of factual or other matters committed to the trial court's discretion, even if the [reviewing] court would have decided the issue differently." *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding) (citing *Walker*, 827 S.W.2d at 839–40); *accord Butnaru*, 84 S.W.3d at 211.

### CONTRACT FORMATION

Having recited the applicable law and standard of review, we turn to the parties' arguments.

Urban Air argues the trial court abused its discretion by denying its motion to compel arbitration because Jonathan had actual or apparent authority to execute the Agreement on behalf of Jason and J.T.

But before we may reach the questions of actual or apparent authority, we must determine whether Urban Air established the existence of a valid arbitration agreement. *See Baby Dolls*, 642 S.W.3d at 585–86; *Henry*, 551 S.W.3d at 115.

To show the existence of a valid arbitration agreement, Urban Air presented a copy of the Release and Indemnification Agreement, which allegedly contains Jonathan's electronic signature. Urban Air argues that by electronically signing the Agreement, Jonathan accepted its terms, and the contract was formed.

But the Treviños contend that the trial court's implied finding that no contract was formed is supported by the evidence.

We examine the evidence pertaining to contract formation.

## A. Evidence of Executed Agreement

In its motion to compel arbitration, Urban Air included a copy of a Release and Indemnification Agreement that showed it was signed electronically. The Agreement was accompanied by an affidavit stating that, inter alia, the Agreement was kept in the course of regularly conducted business activity. *Cf.* TEX. R. EVID. 803(6) (business records hearsay exception).

At the January 10, 2023 hearing on the Treviños' motion for reconsideration, Urban Air emphasized the evidence that showed Jonathan accepted the Agreement before Jonathan, Jason, or J.T. entered the premises, and by Urban Air and Jonathan mutually accepting its terms, and as confirmed by Jonathan, Jason, and J.T. entering the park and participating in the park's activities, the contract was formed.

It was undisputed that Jonathan, Jason, and J.T. went to Urban Air on August 2, 2022. They checked in and paid using electronic devices, they entered the premises, and Jason and J.T. jumped on the trampolines that evening.

The Agreement Urban Air presented included Jonathan's name, date of birth, phone number, and emergency contact information; J.T.'s name and date of birth; a statement that it was electronically signed at 7:38 p.m. CDT on August 2, 2022; and in an area for an electronic signature, an arcing streak mark a few inches long. Urban Air argued that the streak mark was Jonathan's electronic signature, which showed his acceptance of the Agreement's terms and which signified the contract's formation.

**B.** **Jonathan's Testimony**

In his testimony, Jonathan testified that he did not remember signing any document before entering the park that evening. When asked about the streak mark on the Agreement, he denied that it was his signature. To show his signature, the Treviños presented a copy of Jonathan's driver's license, which included his signature. Jonathan confirmed that the signature on his license is what his signature looks like, and he always signs documents with his full signature like that shown on his driver's license. When he was asked if he signed the Agreement, he responded "I did not sign this."

**C.** **Decision Based on Conflicting Evidence**

As the party seeking to compel arbitration, it was Urban Air's burden to establish the existence of a valid arbitration agreement. *See Baby Dolls*, 642 S.W.3d at 585–86; *Henry*, 551 S.W.3d at 115. Its formation, which the Treviños challenged, was a threshold question of fact for the trial court to decide. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(b); *Baby Dolls*, 642 S.W.3d at 586; *RSL Funding*, 569 S.W.3d at 124; *Parker Drilling*, 316 S.W.3d at 72.

In its order denying Urban Air's motion to compel arbitration, the trial court recited that it had reviewed the prior record, considered the additional witness testimony, and concluded that Urban Air's motion to compel should be denied. It did not state the reason for its decision.

The appellate record does not show that findings of fact were requested or made, but it includes reporter's records from the November 16, 2022 and January 10, 2023 hearings. Therefore, we will imply "all facts necessary to support the judgment and supported by the evidence." *Cf. BMC Software*, 83 S.W.3d at 795.

As the factfinder, the trial court's role was to determine the weight and credibility of the witness testimony; it could have believed Jonathan's testimony that he did not sign the Agreement and concluded that no contract was formed. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819

(Tex. 2005). Even if we might decide this question differently, we are not free to substitute our judgment for the trial court's determination of this fact question. *See In re State Farm Lloyds*, 520 S.W.3d at 604 (citing *Walker*, 827 S.W.2d at 839–40).

Because there was some evidence—though contradicted—to support the trial court's implied finding that the Agreement was never formed, we cannot conclude that the trial court abused its discretion.[3] *See HouseCanary*, 622 S.W.3d at 259 ("A trial court does not abuse its discretion when basing a decision on conflicting evidence."); *In re Labatt Food Serv.*, 279 S.W.3d at 643 (requiring our "defer[ence] to the trial court's factual determinations if they are supported by evidence").

## CONCLUSION

To compel the Treviños to arbitrate, Urban Air had to prove a valid arbitration agreement existed, which existence the Treviños challenged as never having been formed. The contract formation question was one for the trial court to decide, and there was some evidence in the record then before it to support its implied finding that the Agreement was not formed.

Accordingly, we cannot say that the trial court's order denying Urban Air's motion to compel arbitration was an abuse of discretion. We affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[3] Because it was not necessary to the final disposition of this appeal, we did not reach the questions of actual or apparent authority or the applicability of direct benefits estoppel. *See* TEX. R. APP. P. 47.1. Nothing in this opinion should be construed to express any conclusion on those questions.